**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ISAAC GARDNER,

        Petitioner,

    v.

JUSTIN JONES,

        Respondent.

No. 08-6211

(W.D. of Okla.)

(D.C. No. CV-07-1329-HE)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **ANDERSON,** and **TYMKOVICH**, Circuit Judges.[**]

Isaac Gardner, appearing pro se,[1] seeks a certificate of appealability (COA) to challenge the district court's denial of his petition for habeas corpus. Gardner was convicted by an Oklahoma jury of forcible oral sodomy. He claims that his constitutional rights were violated when the state trial court admitted evidence of

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[1] Because he proceeds pro se, we construe Gardner's filings liberally. *See Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 815 (10th Cir. 2007).

his prior bad acts and failed to instruct the jury of his parole eligibility. He also claims that his fifteen-year sentence is constitutionally excessive.

No reasonable jurist could conclude the district court's dismissal of his habeas petition was incorrect. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we therefore DENY Gardner's request for COA and dismiss Gardner's appeal.

## I. Background

An Oklahoma jury convicted Gardner of forcible oral sodomy and sentenced him to twenty years in prison. Though Gardner was also charged with attempted sexual battery, the jury found him not guilty of that crime.

During trial, Gardner's victims testified that Gardner entered two Oklahoma City nursing homes on several occasions. On one occasion, Gardner entered a nursing home, led a nursing home resident into a bathroom, locked the door, pulled down the resident's pants, and sexually assaulted him. When the resident called for help, Gardner fled.

On another occasion, Gardner entered a nursing home he had previously visited to meet and chat with a particular resident in her room. On this visit, he entered the resident's room and started a conversation, during which the resident told Gardner that she had suffered several strokes and was unable to walk. After hearing this, Gardner checked to see if anyone was coming, then lifted the resident's bed sheet and looked at the diaper she was wearing. Alarmed, the

resident activated her buzzer to call a nurse, and Gardner fled. When Gardner returned to the nursing home a few days later, the staff recognized him and called the police.

During several videotaped interrogation sessions with the police, Gardner admitted that he had a urine fetish and had visited internet websites containing images of women urinating. He also admitted that he had gone into nursing homes in the past and looked under two women's bed sheets. One of the women had a catheter, which he fondled. He stated that after he touched the catheter and the area of the woman's body surrounding the catheter, he had a partial orgasm. He also stated that he had lived in various cities around the country and had "peeked" in women's windows in those cities. Trial Tr. (State's Ex. 2).

At trial, the prosecution sought to introduce the interrogation tapes. The court held several in-camera hearings during which it considered Gardner's objections to the tapes. After ruling on the objections, the court admitted a redacted version of one of the tapes into evidence. The jury found Gardner guilty of forcible oral sodomy against the first victim but acquitted him of attempted sexual battery against the second victim. The jury sentenced Gardner to twenty years' imprisonment.

Gardner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals (OCCA), claiming (1) the trial court erred when it admitted the interrogation videotape, which contained evidence of Gardner's prior bad acts; (2)

the trial court erred when it failed to instruct the jury on Oklahoma's 85 percent rule; and (3) his sentence was unconstitutionally excessive. The court rejected Gardner's first claim, finding that under Oklahoma law, the interrogation tapes were properly admitted as proof of Gardner's intent to commit attempted sexual battery. However, the court found merit in Gardner's second claim and reduced Gardner's sentence from twenty to fifteen years. Because of this reduction in Gardner's sentence, the OCCA held that his excessive punishment claim was moot.

Gardner subsequently filed an application for post-conviction relief in Oklahoma state district court, raising the same issues as in his direct criminal appeal and adding a claim of ineffective assistance of counsel. The court denied Gardner's application for post-conviction relief, and the OCCA affirmed the denial.

Gardner filed a petition for writ of habeas corpus in United States District Court, which the court denied; the court also declined to issue a certificate of appealability. Gardner now appeals, seeking a COA on various grounds.

## II. Discussion

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state prisoner may not appeal a district court's denial of his habeas petition unless the prisoner first obtains a COA from the district or circuit court. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *see also* 28 U.S.C. § 2253(c)(1). We

issue a COA "only if the applicant has made a substantial showing of the denial

of a constitutional right." *Fleming v. Evans*, 481 F.3d 1249, 1254 (10th Cir.

2007) (quoting 28 U.S.C. § 2253(c)(2)). Therefore, the applicant must

demonstrate "that reasonable jurists could debate whether (or, for that matter,

agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further." *Id.*

(quoting *Slack*, 529 U.S. at 484).

In deciding whether to grant Gardner a COA, we incorporate AEDPA's

deferential treatment of state court decisions. *Dockins v. Hines*, 374 F.3d 935,

938 (10th Cir. 2004). We undertake a "preliminary, though not definitive,

consideration" of the legal framework applicable to each of Gardner's claims.

*Miller-El*, 537 U.S. at 338. To be entitled to a COA, Gardner need not establish

that he will succeed on appeal, but he must prove more than "the absence of

frivolity or the existence of mere good faith." *Id.* (internal quotations omitted).

Gardner's application for a COA asserts various claims, several of which

were not raised in his habeas petition or addressed by the district court.[2] We need

not address claims raised for the first time on appeal, and will not issue a COA

---

[2] For example, Gardner claims that "[t]he state court erred in not setting forth the requirement of the law;" that the prosecutor deliberately suppressed "biological evidence [that] would be favorable to petitioner;" and that "[t]he prosecutor's prejudicial comments on cross-examination and during closing arguments deprived [Gardner] of a fair trial." Application for COA at 2–4.

for the claims Gardner failed to include in his habeas petition.[3]  *See, e.g.,*

*Coppage v. McKune*, 534 F.3d 1279, 1282 (10th Cir. 2008); *Dockins*, 374 F.3d at

940.

Gardner does, however, seek a COA on two claims raised below: (1)

whether the state court erred in admitting evidence of his prior bad acts, and (2)

whether his sentence violates the Eighth Amendment.  Because we must construe

Gardner's pro se pleadings liberally, we also analyze (3) whether a COA is

appropriate for the other claim in his habeas petition:  that the trial court erred in

not instructing the jury on Oklahoma's 85 percent rule.

## A.     Evidence of Prior Bad Acts

Gardner contends his constitutional rights were violated when the trial

court admitted evidence that he had a urine fetish, had previously committed

sexual assault against another nursing home resident, and had a history of

"peeking" into women's windows.  *See* Trial Tr. (State's Ex. 2).  The OCCA

rejected this argument, holding that under Okla. Stat. tit. 12,

§ 2404(B)—Oklahoma's evidentiary rule governing the admission of prior bad

acts—the trial court did not abuse its discretion because Gardner's prior bad acts

were relevant to his intent to commit attempted sexual battery.  The OCCA also

---

[3] Not only did Gardner fail to raise these claims in his federal habeas petition, he also failed to raise them in his direct criminal appeal to the OCCA and his application for post-conviction relief in state court.  These claims are therefore procedurally barred from being considered in federal habeas proceedings.  *See Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).

held that if any error occurred, Gardner failed to establish prejudice because the jury acquitted Gardner of attempted sexual battery.

We give considerable deference to state court evidentiary rulings and "may not provide habeas corpus relief . . . unless [those rulings] rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotations omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999) (applying the same standard to review a state court's decision to admit evidence of prior bad acts).

Below, the magistrate judge determined the OCCA's analysis of the prior bad act evidence was neither contrary to nor an unreasonable application of Supreme Court precedent. We agree. The trial court heard Gardner's objections to the prior bad act evidence during several hearings, and ruled that the evidence was relevant to his intent to commit attempted sexual battery. Though the evidence might have been "disturbing" to the jury, the trial court's decision to admit the evidence did not render Gardner's trial fundamentally unfair. *Cf. Duckett*, 306 F.3d at 999–1000 (trial court's admission of a disturbing crime-scene videotape showing the murder victim did not violate the petitioner's constitutional rights).

Furthermore, any error the trial court committed in admitting the evidence is tempered by the fact that direct evidence, in the form of a victim's testimony, demonstrated that Gardner committed the only crime for which he was

convicted—forcible oral sodomy.  *Cf. Smallwood*, 191 F.3d at 1277 (holding that because there was direct evidence the petitioner committed the crime for which he was convicted, admission of prior bad acts did not make the trial "fundamentally unfair").  Because the trial court's admission of Gardner's prior bad acts did not render his trial fundamentally unfair, Gardner is not entitled to a COA on this claim.

## B.    Excessiveness of the Sentence

Next, Gardner argues his fifteen-year sentence—reduced from twenty years by the OCCA—is so excessive as to be unconstitutional under the Eighth Amendment.  "We afford wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law."  *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000).  Indeed, our review generally ends "once we determine the sentence is within the limitation set by statute."  *Id*.

Gardner's fifteen-year sentence is within the statutory range of punishment for forcible sodomy in Oklahoma.  *See* Okla. Stat. tit. 21, § 888(A).  Though the jury originally imposed a twenty-year sentence, the OCCA modified the sentence to fifteen years.  This sentence is not "extraordinary" or "grossly disproportionate" for a crime like forcible sodomy, *see United States v. Gillespie*,

452 F.3d 1183, 1190–91 (10th Cir. 2006) (collecting authorities), and we deny Gardner's application for COA on his Eighth Amendment claim.

## C. Refusal to Instruct on Oklahoma's Eighty-five Percent Rule

Finally, we consider whether COA should be granted on Gardner's claim that he is entitled to habeas relief because the state court did not instruct the jury on Oklahoma's 85 percent rule. Under the 85 percent rule, "[p]ersons convicted of: . . . [f]orcible sodomy . . . shall be required to serve not less than eighty-five percent (85%) of any sentence of imprisonment imposed by the judicial system prior to becoming eligible for consideration for parole." Okla. Stat. tit. 21, § 13.1 (2002). In 2006, after Gardner was convicted and sentenced, the OCCA held that trial courts should instruct jurors on the 85 percent rule prior to sentencing. *Anderson v. State*, 130 P.3d 273, 283 (Okla. Crim. App. 2006). The *Anderson* court, however, specified that its holding was prospective and did not apply to "cases before this decision." *Id.*

The United States Supreme Court has not held that the Constitution requires the jury to be informed of a defendant's parole eligibility in a non-capital case. Indeed, the Court has only held that the Constitution requires such information to be provided to a jury in a limited set of *capital* cases. *See, e.g., Simmons v. South Carolina*, 512 U.S. 154 (1994) (holding, in a capital case, that the jury must be informed of parole eligibility when: (1) the defendant, if sentenced to life, will never become legally eligible for parole; and (2) the

prosecution argues that the defendant presents a future danger).  In light of this precedent, Gardner has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The trial court's failure to instruct on the 85 percent rule did not render Gardner's trial fundamentally unfair in a constitutional sense.  *See Taylor v. Parker*, 276 F. App'x 772, 775–76 (10th Cir. 2008) (unpublished) (in a non-capital case, rejecting petitioner's contention that he was entitled to habeas relief because the trial court failed to instruct the jury on Oklahoma's 85 percent rule).

We therefore deny Gardner's application for a COA on this claim.

## III.  Conclusion

For the reasons set forth above, we **DENY** Gardner's application for a COA and **DISMISS** the appeal.  Gardner's motion to proceed *in forma pauperis* is **DENIED**.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge
